(Cuyahoga County O., Common Pleas.)

THE INCORPORATED VILLAGE OF GLENVILLE, in the State of Ohio,

v.

ALBERT P. PROUT and JOHN G. SWANSON, Partners under the firm name of Prout & Swanson, THE NATIONAL SEWER PIPE COMPANY, a Corporation, and E. M. BUEL.

---

(1.) A corporation incorporated under the laws of Ohio signing a contract or doing any other act legitimate or proper in itself, to further its manufacturing facilities or to enable it to more readily and to a larger extent dispose of its products, thereby seeking directly to benefit itself by thus contracting or becoming security on a contract, if default should be made, is bound by its obligation, and is estopped from setting up the plea of ultra vires.

(2). In this case a corporation, incorporated to manufacture and sell sewer pipe, paving brick, terra cotta, and other products of earth, minerals and clay, signed as security the bond of a contractor who had been awarded the contract to construct the sewers in the village of Glenville according to plans and specifications adopted by said village. The consideration being that such contractor agreed to buy the sewer pipe, etc., necessary in executing the contract with the village from such corporation. The contractor abandoning the contract, the corporation was sued on its obligation under the contractor's bond, signed by it, and attempted to set up the defense that its signing such bond was an act ultra vires. Held: The corporation was estopped from setting up this defense, and was liable.

---

Ong, J.

This case is before the court on a demurrer filed by the defendant, the National Sewer Pipe Company, to the amended petition of the plaintiff. The disposition of the demurrer, at least so far as the common pleas court is concerned, will be a final termination of the questions in controversy except in so far as amounts may be concerned.

The facts are as briefly set forth in the amended petition as the court could state them. Hence the amended petition reads as follows:

"Plaintiff says, that it is a municipal corporation under the laws of the state of Ohio, and located in the county of Cuyahoga in said state. That the defendants, Albert P. Prout and John C. Swanson, at all times hereinafter mentioned, were, and are now, partners, doing business under the firm name of Prout & Swanson, and that their partnership had an office, and now has an office in Glenville, in said county of Cuyahoga. That the National Sewer Pipe Company is a corporation incorporated as expressed in the articles of incorporation 'for the purpose of a manufacturing and selling sewer pipe, tile, paving brick, terra cotta, stone and crockery ware and other products of earth, minerals and clay.' No limitations of power are expressed in its articles, and no other purposes are expressed. That prior to the 27th day of August, the said plaintiff had determined to construct a sewer system in section 1, of sewer district No. 2, in said village, according to the plans and specifications then on file in the office of the clerk of said village, and its council had done all those things necessary to authorize it to enter into a contract for the construction of said sewer system, and for taking of the bond hereinafter described, and on said day, said defendants, A. P. Prout and John C. Swanson, and Prout & Swanson as partners, and the National Sewer Pipe Company by said E. M. Buel, its secretary, entered into a certain bond of the date of August 26th, 1897, to the said village of Glenville in the sum of $13,400, a copy of which bond is hereto attached and marked 'Exhibit A' and made a part hereof. That by the terms of said bond, the

said Prout & Swanson, a partnership, and the National Sewer Pipe Company agreed that the said Prout & Swanson should construct the main, sub-mains and lateral sewers together with such drains and man-holes and other appurtenances in section No. 1, of sewer district No. 2, in the village of Glenville, in the county of Cuyahoga, and state of Ohio, in accordance with the terms of a contract entered into by the said plaintiff and said Prout & Swanson and specifications thereto attached.

"Plaintiff says that the performance of said contract required the purchase and use of such sewer pipe and other material for which the said defendant, the National Sewer Pipe Company, were incorporated to manufacture and sell, in large quantities, to-wit: To the amount of more than $10,000 in value; and said the National Sewer Pipe Company was desirous of selling the same to the said Prout & Swanson, for the purpose of the construction of said sewer, and the said Prout & Swanson, agreed with the said the National Sewer Pipe Company, that in consideration of their signing said bond, the sewer pipe and other material, which the said the National Sewer Pipe Company had for sale, necessary to the construction of said sewer, should be purchased of the said the National Sewer Pipe Company, and the said the National Sewer Pipe Company, in order to promote its said business, and make the sale of the said material to the said Prout & Swanson, executed said bond by its said secretary, E. M. Buel, who did the same with the knowledge and consent and authority of the directors of the said company, and all of which was given and done by them in order to make the sale of this said sewer pipe and other material, and the said the National Sewer Pipe Company thereby became a party to said contract for the construction of said sewer, and bound for the faithful performance on the part of said Prout & Swanson of their contract for the construction of said sewer. That said village accepted said bond and acted upon it in good faith, and proceeded to

expend money in payment for the construction of said sewer, and did expend large sums of money, relying upon said bond, and believing the same to be a binding obligation upon the signers thereof. That said defendant, the National Sewer Pipe Company, for a long time prior thereto, had been in the habit of giving such bonds to aid it in the sale of its products, all of which was known by all of the members of said corporation; and other concerns located in the same vicinity as said defendant, the National Sewer Pipe Company, and engaged in the same business, were then in the habit of performing similar transactions in making sales to customers in the vicinity of this plaintiff, and other persons who would be seeking to buy such products.

"Plaintiff alleges that it was necessary and needful that the defendant, the National Sewer Pipe Company, should enter into arrangements of the kind described with Prout & Swanson in order to accomplish the objects for which it was incorporated, and to successfully compete with other concerns in the same vicinity who were engaged in the same business, and who were in the habit of promoting their business by entering into like transactions. That said Prout & Swanson did buy such material of said defendant, the National Sewer Pipe Company, and paid for the same, and that said the National Sewer Pipe Company realized a profit thereon, and received the benefits of such arrangements with Prout & Swanson, and are still in possession of said benefits.

"Plaintiff says that if the said defendant, the National Sewer Pipe Company, can not be held on its said bond because of the fact that it was incorporated for the purpose only aforesaid set forth, then, and in that case, said E. M. Buel would be bound individually for the faithful performance of said bond.

"Plaintiff says that Prout & Swanson entered upon the performance of said contract and undertook to perform the same until a small portion thereof, perhaps about one-fourth, had been performed, but not in a manner

in compliance with the specifications attached to said contract; that thereupon, to-wit, upon the——day of January, 1898, said Prout & Swanson abandoned the performance of said contract and have not performed any part thereof since, and have notified the plaintiff of their intention never to perform any part thereof."

To this petition the defendant, the National Sewer Pipe Company, interposes a general demurrer, and contends that no action can be maintained against it on the bond given by the defendants, Albert P. Prout and others, signed by this corporation, for the reason that the petition discloses the fact that the National Sewer Pipe Company is a corporation organized under the laws of the state of Ohio for the manufacture of sewer pipe and other clay products, and that, as such corporation, its name was signed to the bond sued on in this action, by its secretary, as surety for the defendant Prout & Swanson. And while it is true that upon demurrer all facts well pleaded in the petition are to be taken as true, nevertheless the defendant company through its counsel contends that the act on the part of the corporation in signing the bond as surety is ultra vires, and for that reason the corporation is in no manner bound or liable upon the bond set forth in the petition, and, in support of that position counsel for the demurrer cite many authorities, and among some very noted cases, among which are Davis v. the Old Colony Railroad Company, 131 Mass.; 101 Mass.; 91 Pa. St.; and authorities almost without limit,—sustaining the position taken by counsel for the demurrer.

It being conceded by both parties that the question made by this demurrer, presented by the facts set forth in the petition, has never yet been passed upon directly by any of the courts in Ohio, and that being true, it has lead me to a very careful consideration of the question involved. And, after much examination of the subject, and study of the propositions, I have reached a conclusion that is satisfactory at least to myself. I have, however, been somewhat astounded at the strictness with which corporation charters were originally adhered to and the imperative limit put upon the power of a corporation to transact business or to make valid and binding contracts; for instance, it was in 13 Peters Reports, U. S. Supreme Court, decided by Chief Justice Tanney, the case being argued on one side by Daniel Webster, in which it was decided, that a corporation could not go outside of the state in which it was incorporated to do business and that if it incurred any obligations outside of the state, such liabilities could not be enforced against it, and that if there were any debts due it outside of the state in which it was incorporated, it could not enforce such obligations in its own favor.

Again, it was said in Sedgwick on Statute and Constitutional Law, that the terms of a charter should be most strongly construed against a corporation to limits its power to what is expressly granted in the charter, and everything that does not clearly appear to be authorized must be understood to be prohibited.

So strict were the holdings of the courts, and the doctrine laid down by our text-writers upon the subject of corporate powers that if corporations were to be guided and limited by such holdings in this day and age, and we were to adhere to such strictness and enforcement of the doctrine of ultra vires, they would be absolutely powerless to transact business to any great extent, and utterly unable to collect that which is due them, in the light of business methods and the manner in which business is transacted in this age. How strange the doctrine of Sedgwick and 13 Peters sounds as compared with Beach on Corporations and the doctrine of ultra vires, when he says (published in 1891): "When acts of corporations are spoken of as ultra vires, it is not intended that they are unlawful or even such as the corporation can not perform, but merely those which are not within the powers conferred upon the corporation by the act of its creation, and are in violation of the trust reposed in the managing board of share holders that the

affairs shall be managed and the funds applied solely for the carrying out of the objects for which the corporation was created."

The statements of the two propositions, or rather the quotations from the two authorities at once bring to the mind of the court the wonderful progress made in the commercial world during that period of time. It also brings to the mind of the court the fact that the law applicable to corporations in the construction of chartered power, has wisely and in a large degree kept pace with the progress in the method and manner of transacting the commercial business of the world. How utterly hopeless and powerless the great corporations of this day would be if limited to the territory of one commonwealth. How strange the doctrine would seem if we were required in this age to construe strictly against the corporations, the limitations put upon its charter, and all that did not fall clearly within the provisions of the charter should be taken as prohibited. The statements of the different holdings and the law applicable to corporations of former years to which I have referred, and those of the present times are not conflicting, and neither are the early decisions and text writers overruled by the later decisions or more modern textwriters because in the days of Webster and Tanney such constructions, such limitations answered then the purpose of a corporation and enabled the corporation to do business upon the same commercial basis on which business was then transacted. So as that the only distinction, after all, is, that the modern decisions are only in keeping with the vast expansion of commercial business, and the method and manner of transacting the same. But this by no means strikes down or takes away entirely from jurisprudence the old and well recognized doctrine of ultra vires which is a term used to express the action of a corporation which is beyond the powers conferred upon it by its charter or the statute under which it was instituted.

Corporations of this day may do many things, may enter into many contracts, may assume many obligations which would be ultra vires, and make a complete defense to an action. But the question here presented in this petition is, was the act of the defendant, the National Sewer Pipe Company, a corporation under the laws of Ohio, ultra vires; that is to say, was there any power under the charter of the corporation to enter into the bond sued upon, and become surety thereon.

I find considerable authority—and many cases have been cited by attorneys for the plaintiff, holding that where a corporation has entered into a contract or become surety for the performance by another of a contract * * * by which act the corporation itself receives a benefit, or is benefited by so doing, than then if the contract is only partly performed or if they have not received as much or any benefit from such acts, it will be estopped from making the defense of ultra vires; in other words, as put by Beach: "It is not that the contracts are unlawful or even such as the corporation could not perform, but are only those contracts that are not within the powers conferred upon the corporation by the act of its creation."

Now, what does the charter of the defendant, the National Sewer Pipe Company, a corporation in Ohio, confer? In other words, what was it incorporated to do? It was incorporated to manufacure and sell in large quantities, sewer pipe, paving brick, terra cotta, stone and crockery ware, and other products of earth, minerals and clay. Under such charter what may it do in the way of selling its products thus manufactured? May a corporation not resort to all legitimate and proper means in disposing of its wares and manufactured articles, and do so by established methods of transacting commercial business? Is it in any manner restricted to the selling of its articles in any given manner? May it not go, by its agents, upon the road, carrying its samples, selling its goods not only in this but in foreign lands? May it not receive in compensation for its goods, either money, credits or property of any description? May it not, through its agents and its

officers do anything that will enhance its trade or enable it to dispose of its products, in any way that is a recognized method, or may be done by those engaged individually in the same commercial business?

There can be but one answer. It may. If it may do all those things, out of what does the limitation grow, that it shall not enter into a contract or sign a bond whereby it may increase its facilities or ability to dispose of its wares as in this case, "If you, Prout & Swanson. purchase of us, the National Sewer Pipe Company, the material necessary or the completion of your contract with the village of Glenville, which will enable us to sell" (this is the very language now used in the charter) "a large proportion of our product, then we, to-wit, the corporation acting by its board of directors will become your surety for the faithful performance of your contract."

If it may say that "we will give to you a credit of the whole amount of material until you have completed your contract, necessary to perform the work,—if you will buy our material," and thus, through its board of directors, bind and oblige its stockholders and in that way and by that act enable it to dispose of its product that it otherwise could not dispose of and be bound, as it must be conceded it would be, why may it not say "if you will use our goods in large quantities necessary to complete your contract, and pay therefor, we will become your sureties for the faithful performance of your contracts."

Both acts have the same objects in view, to-wit, to enable it to *sell* its sewer pipe manufactured under its charter.

Again, if Prout & Swanson, the contractors, with the plaintiff had faithfully performed their contract instead of making breach thereof as averred in the petition, and had collected the contract price therefor, and had consumed, as it would have done, a large quantity of the product of the defendant out of which the defendant company had realized, as it would doubtless, a large profit, the directors of the corporation had received the money at their annual meeting, were ready to declare a dividend dividing the profits realized out of the sale of its products through Prout & Swanson to the village of Glenville, what power exists that could have interfered—what member of the board of directors or the president of the company could have interfered and said to the stockholders: "You should not have and are not entitled to the profits realized out of the Glenville contract, for the reason that the act of the board of directors in signing that bond and becoming surety thereon for Prout & Swanson, was an act ultra vires and the stockholders were in no manner bound thereby, and not being bound under the contract, cannot, of course, though executed, take the fruits thereof."

Such a position could not, for one moment, be maintained. It is only these tests of a rule that make the rule of law good or bad. If, however, by that act which enabled them to sell its goods, a profit was realized and was lawfully received and lawfully divided among its stockholders, by what course of reasoning or justice, can it now be said by the same corporation or the board of directors or stockholders, that, because profits were not realized, because Prout & Swanson made default on their contract, this corporation should be relieved from its liabilities and responsibilities upon the bond because the act, it says, was ultra vires. What about the village of Glenville? But for the act of the corporation Prout & Swanson would not have received the contract or, if they did, other sureties would have been furnished about which there could be no question. If other parties had received the contract, Prout & Swanson being unable to give the security, then the work would have been done, the village of Glenville unharmed, and no damage have resulted; but, by the act of the defendant corporation, the contract was let, the breach occurred, the damage to the village has followed, and now without fault on its part, must it bear this burden induced and brought about by the act of the cor-

poration by which acts it sought to benefit itself and its stockholders? The proposition to my mind is not tenable at all. We think in the light of recent decisions—we think in keeping with the manner and method of doing business in the commercial world, that not only must this corporation answer to the conditions and obligations of this bond if in the end the allegations of the petition shall be made good, but we think they are clearly liable for all damages sustained by the plaintiff by reason of the breach alleged in its petition; and, while, as the court has said, there is no direct holding upon this subject in this state, yet we feel abundantly sustained in the position taken, by the doctrine announced in the 151 New York Court of Appeals, the opinion rendered by Chief Justice Andrews.

That was an action brought by a lessor corporation to enforce to the extent of past due rent and unpaid taxes, a bond executed to it by a lessee corporation and sureties, to secure performance of the terms of the lease, not malum in se or expressly prohibited by law, and not within the expressed or implied powers of the lessor corporation, under which the lessee has occupied and enjoyed the leased premises and property. The defense of ultra vires was made, insisting that the contract was illegal and could not be enforced. The second part of the syllabus reads:

"A contract made by a corporation without legislative sanction, and hence in excess of its powers, but involving no moral turpitude and offending against no express statute, is not necessarily 'illegal' in such a sense as to prevent the maintenance of any action upon it."

Again, Judge Andrews says:

"We think the demands of public policy are fully satisfied by holding that, as to the public, the lease was void, but that, as between the parties so long as the occupation under the lease continued, the lessee was bound to pay the rent, and that its recovery may be enforced by action on the covenant. Public policy is promoted by the discouragement of fraud and maintenance of the obligation of contracts, and to permit a lessee of a corporation to escape the payment of rent by pleading incapacity of the corporation to take the lease, although he has had the undisturbed enjoyment of the property, would be, we think, most inequitable, and unjust."

So here the defendant, the National Sewer Pipe Company, had the benefit of this contract and of its obligations as surety to the extent that the contract was performed, have now and still hold the same whatever it was; but a breach having occurrred, they insist that their act was ultra vires and that no action ought to be maintained against them. We think such a holding in this case would be clearly most inequitable and unjust.

Some modern author, possibly Beach, in discussing this question, cites as an illustration, why this should be the law and why the courts should adhere to the doctrine announced in this case: that Brewing Associations all over this country, and possibly in Europe, whilst they are incorporated to brew beers and other liquids, yet a very large portion of their product is disposed of by the corporation leasing the property, going security upon the leases for those that vend their goods, becoming liable thereon, paying the rents, and all for the purpose of putting their beer or liquids upon the market through such agency. Who would think, with the vast transaction and method of doing business by a corporation, of saying that so long as a tenant succeeds in paying his rent, selling the goods of the brewer (the corporation), and putting into its pockets the profits, that then they continue; but, if they should fail or should make default in the payment of rent, then the corporation would say its acts were ultra vires and it could not be made liable.

We are unable to distinguish between that and the method resorted to by this defendant to dispose of its manufactured wares.

Hence we believe and hold the law to be that a corporation in Ohio, incorporated under the laws of Ohio, that signs a contract or does any

other act legitimate and proper, to either further its manufacturing facilities or to enable it to more readily and in a larger degree dispose of its products, seeking the benefit directly to itself by thus contracting or becoming security on a contract, if default shall be made as set forth in the petition in this case, then such corporation is clearly bound by its obligations, and the defense or doctrine of ultra vires has no place in the administration of the law fixing and determining the liability of such corporation.

Having reached this conclusion, and believing that we are supported by abundant authority and the best of reasoning, the demurrer in this case will be overruled and exception noted.

O. C. Pinney and Phillips & Phillips, for Plaintiff.

Chas. Baird and E. F. Force, for Defendant.

---

(Hamilton Co., O., Probate Court.)